201757161 - PICASSO, JACKELINE vs. METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS (Court 127)

Chronological History    Print All *(non-financial)*

Summary    Appeals    Cost Statements    Transfers    Post Trial Writs    Abstracts    Parties
Court Costs    Judgments/Events    Settings    Services/Notices    Court Registry    Child Support    Images

Print Events

↻ Click column headings to sort. Click again to toggle direction.

| Date | Description | Order Signed Date | Post Jdgm | Pages | Volume/Page | Filing Attorney | Person Filing |
|---|---|---|---|---|---|---|---|
| 10/11/2017 | ANSWER ORIGINAL PETITION | | | | | CONDER, DENNIS D. | METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS |
| 8/28/2017 | ORIGINAL PETITION | | | | | CHAPA, JESUS ANTONIO | PICASSO, JACKELINE |

[WS5]



EXHIBIT

8/28/2017 1:36 PM
Chris Daniel - District Clerk Harris County
Envelope No. 19112097
By: Rhonda Momon
Filed: 8/28/2017 1:36 PM

# 2017-57161 / Court: 127

Cause No. _____

| | | |
|---|---|---|
| JACKELINE PICASSO | § | IN DISTRICT COURT |
| | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | |
| | § | |
| METROPOLITAN LLOYDS INSURANCE | § | HARRIS COUNTY, TEXAS |
| COMPANY OF TEXAS | § | |
| | § | |
| *Defendants* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Jackeline Picasso ("Plaintiff") files this Original Petition against Defendants Metropolitan

Lloyds Insurance Company of Texas ("Metropolitan") and in support of her causes of actions,

would respectfully show the Court the following:

### I.
### THE PARTIES

1.    Plaintiff is a Texas resident who resides in Harris County, Texas.

2.    Defendant Metropolitan is an insurance company doing business in the State of Texas

which may be served through its registered agent for service of process in the State of Texas, CT

Corporation System, via certified mail at 1999 Bryan St., Ste. 900, Dallas, TX 75201.

### II.
### DISCOVERY

3.    This case is intended to be governed by Discovery Level 3.

## III.
## CLAIM FOR RELIEF

4.      The damages sought are within the jurisdictional limits of this court. Plaintiff currently seeks monetary relief over $100,000 but not more than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney's fees. However, to the extent that Defendant refuses to cooperate in discovery, makes frivolous and unwarranted objections, files needless motions, quashes depositions and discovery requests without a reasonable basis, asserts unjustified or false affirmative defenses, makes unwarranted special exceptions, hires individuals they claim to be "experts" who give false opinions or testimony, produces witnesses who commit perjury, conducts excessive discovery, or otherwise needlessly delay litigation, the costs, expenses, interest, and attorney's fees will likely be over $200,000 but not more than $1,000,000.

## IV.
## JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction of this cause of action because it involves an amount in controversy in excess of the minimum jurisdictional limits of this Court. No diversity of citizenship exists in this matter.

6.      This Court has jurisdiction over Defendant Metropolitan because Defendant committed a tort in Texas and because this Defendant engages in the business of insurance in Texas.

7.      Venue is proper in Harris County under Tex. Civ. Prac. & Rem. Code §15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County. In particular, the loss at issue occurred in Harris County.

## V.
## FACTUAL BACKGROUND

8.      Plaintiff owned certain real property with improvements and personal property located at 15915 Mission Glen Dr., Houston, TX 77083 (the "Property").

9.      Plaintiff is a named insured under a property insurance policy number 875451230-0

(the "Policy") issued by Defendant Metropolitan.

10.     On or about August 19, 2016, a storm hit the Houston, Texas area, damaging Plaintiff's Property. Plaintiff subsequently filed a claim on her insurance policy (the "Claim").

11.     Defendant Metropolitan improperly denied and/or underpaid the claim.

12.     Defendant Metropolitan assigned an individual adjuster on the claim.

13.     On or about September 2016, Defendant Metropolitan's adjuster conducted a substandard investigation and inspection of the property, prepared a report that failed to include all of the damages that he noted during the inspection, and undervalued the damages he observed during the inspection.

14.     Defendant Metropolitan's unreasonable investigation led to the underpayment of Plaintiff's claim.

15.     Moreover, Defendant Metropolitan performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's losses on the property.

16.     Subsequently, Plaintiff was forced to fix her own home.

17.     Plaintiff's expenses showed damages to the property and damage amounts significantly over those found by Defendant Metropolitan's adjuster.

18.     All Defendant Metropolitan failed to comply with the Policy, the Texas Insurance Code and Texas law in handling Plaintiff's claim. Further, Defendant Metropolitan has refused to pay all amounts due and owing under the Policy for the claim, compelling Plaintiff to file a lawsuit.

## VI.
## CAUSE OF ACTIONS

19.    Each of the foregoing paragraphs is incorporated by reference in the following:

**A.  Breach of Contract**

20.    Defendant Metropolitan had a contract of insurance (i.e. Policy) with Plaintiff. Defendant Metropolitan breached the terms of that contract by wrongfully denying and/or underpaying the claim and Plaintiff was damaged thereby.

21.    The Policy is a valid, binding and enforceable contract between Plaintiff and Defendant Metropolitan. Defendant Metropolitan breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law. Defendant Metropolitan breach proximately caused Plaintiff's injuries and damages. These damages are all a result of Defendant's failure to pay what was owed. All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff.

**B.  Prompt Payment of Claims Statute**

22.    The failure of Defendant Metropolitan to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.051 et seq. of the Texas Insurance Code.

23.    Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to 18% interest and attorneys' fees as set forth in Article 542.060 of the Texas Insurance Code.

**C.  Bad Faith and Unfair Settlement Practices**

24.    Defendant Metropolitan is required to comply with Chapter 541 of the Texas Insurance Code.

25.    Defendant Metropolitan violated § 541.051 of the Texas Insurance Code by:

(a)    making statements misrepresenting the terms and/or benefits of the policy.

26.    Defendant Metropolitan violated § 541.060 by

a)      misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

b)      failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

c)      failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

d)      failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

e)      refusing to pay the claim without conducting a reasonable investigation with respect to the claim;

27.     Defendant Metropolitan violated § 541.061 by:

a)  making an untrue statement of material fact;

b)  failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made;

c)  making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

d)  making a material misstatement of law; and

e)  failing to disclose a matter required by law to be disclosed.

28.     Each of the foregoing unfair settlement practices were completed knowingly by Defendant Metropolitan and were a producing cause of Plaintiff's injuries and damages. Defendant Metropolitan had actual knowledge of the facts yet, in spite of that knowledge, consciously made the decisions outlined above. The injuries are the actual damages outline above, as well as loss of use, loss of time, the engagement of a public adjuster, and other expenses as well as other

consequential damages.

### D.  Breach of the Duty of Good Faith and Fair Dealing/Bad Faith

29.     Defendant Metropolitan breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on Plaintiff's claim when Defendant Metropolitan knew or should have known that liability was reasonably clear. Defendant Metropolitan's conduct proximately caused Plaintiff's injuries and damages. Defendant Metropolitan has withheld payment of the amounts owed above. Defendant Metropolitan was grossly negligent and/or intentional in its breach, thus giving rise to punitive damages. The liability of Defendant Metropolitan was reasonably clear, yet it failed to reasonably settle the Plaintiff's claim. This bad faith caused damages independent of the original damage caused by the occurrence. These include loss of use, public adjuster fees, loss of time, and other consequential damages.

### E.  Attorneys' Fees

30.     Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendants and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

31.     Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE §§ 38.001-38.003 because she is represented by an attorney, presented the claim to Defendant Metropolitan, and Defendant Metropolitan did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

32.     Plaintiff further prays that she be awarded all reasonable attorneys' fees incurred in prosecuting her causes of action through trial and any appeal pursuant to Sections 541.152 542.060 of the Texas Insurance Code.

## VII.
## CONDITION PRECEDENT

33.     All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by the Defendant Metropolitan.

## VIII.
## JURY DEMAND

34.     Plaintiff requests a jury trial.

## IX.
## DISCOVERY REQUEST

35.     Pursuant to Rule 194, you are requested to disclose, within fifty (50) days after services of this request, the information or material described in Rule 194.2(a) – (1).

36.     You are also requested to respond to the attached interrogatories, requests for production and requests for admission within fifty (50) days, in accordance with the instructions stated therein.

## X.
## PRAYER

WHEREFORE, PREMISES, CONSIDERED, Jackeline Picasso prays that, upon final hearing of the case, she recover all damages from and against Defendant Metropolitan that may reasonably be established by a preponderance of the evidence, and that Ms. Picasso be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Ms. Picasso may show herself to be justly entitled.

Respectfully submitted,

WILLIAMSON & RUSNAK

*/s/ Jesus Chapa*
Jesus Chapa
Texas Bar No. 24075891
Cyndi Rusnak
Texas Bar No. 24007964
4310 Yoakum Blvd.
Houston, Texas 77006
Telephone (713) 223-3330
Facsimile (713) 223-0001
jesus@jimmywilliamson.com
cyndi@jimmywilliamson.com

**ATTORNEYS FOR PLAINTIFF**

**2017-57161 / Court: 127**

# Exhibit 1

## PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION AND REQUESTS FOR ADMISSIONS

COMES NOW Plaintiff in the above-styled and numbered cause, and requests that Defendant(s) (1) answer the following Interrogatories separately and fully in writing under oath within 50 days of service; (2) answer the Requests for Production separately and fully in writing within 50 days of service; (3) answer the Requests for Admissions separately and fully in writing within 50 days of service; (4) serve your answers to these Interrogatories, Requests for Production, and Requests for Admissions on Plaintiff by and through his/her attorneys of record, Williamson & Rusnak, 4310 Yoakum Blvd., Houston, Texas 77006; and (5) produce all documents responsive to the Requests for Production as they are kept in the usual course of business or organized and labeled to correspond to the categories in the requests within 50 days of service at the office Williamson & Rusnak. You are also advised that you are under a duty to seasonably amend your responses if you obtain information on the basis of which:

a.    You know the response made was incorrect or incomplete when made; or

b.    You know the response, though correct and complete when made, is no longer true and complete, and the circumstances are such that a failure to amend the answer in substance is misleading.

## DEFINITIONS AND INSTRUCTIONS

A.   These Responses call for your personal and present knowledge, as well as the present knowledge of your attorneys, investigators and other agents, and for information available to you and to them.

B.   If you cannot answer a particular Interrogatory in full after exercising due diligence to secure the information to do so, please state so and answer to the extent possible, specifying and explaining your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

C.   If you claim that any document which is required to be identified or produced by you in any response is privileged:
1.   Identify the document's title and general subject matter;
2.   State its date;
3.   Identify all persons who participated in its preparation;
4.   Identify the persons for whom it was prepared or to whom it was sent;
5.   State the nature of the privilege claimed; and
6.   State in detail each and every fact upon which you base your claim for privilege.

D.   "Documents," includes any written, recorded or graphic matter, however produced or reproduced, of every kind regardless of where located including, but not limited to, medical records, tax returns, earnings statements, any summary, schedule, memorandum, note, statement, letter, telegraph, interoffice communication, report, diary, ledger, journal, log, desk or pocket calendar or notebook, day book, appointment book, pamphlet, periodical, worksheet, cost sheet, list, graph, chart, telephone or oral conversation, study, analysis, transcript, minutes, accounting records, data sheet, tally or similar freight documents, computer printout, electronic mail, computer disk, and all other memorials of any conversations, meetings and conferences, by telephone or otherwise, and any other writing or recording which is in your possession, custody or control or in the possession, custody or control of any director, officer, employee, servant or agent of yours or your attorneys. The term "documents" shall also include the files in which said documents are maintained. Electronically stored information should be produced in PDF format.

E.   "You," "Your," "Yours", "Defendants" and "Defendant" means all Defendants in this case.

F.   In each instance where you are asked to identify or to state the identity of a person, or where the answer to an Interrogatory refers to a person, state with respect to each such person:
1.   His or her name;
2.   His or her last known business and residence address and telephone

number; and

3. His or her business affiliation or employment at the date of the transaction, event or matter referred to.

G.   If you decide that one question is not simply one question and plan to object based upon more than 25 interrogatories, you are instructed to skip that question and continue to answer what you consider to be only one question, by answering only the first 25 alleged single questions. By answering any one numbered question, you are hereby admitting that one number question is in fact one question and waive any objection based upon a limit of interrogatories.

H.   "Plaintiffs" and "Plaintiff" includes all Plaintiffs, and refers to a single Plaintiff or multiple Plaintiffs, if applicable.

I.   "Property" means the property at issue in the lawsuit.

J.   "Lawsuit" means this lawsuit.

Respectfully submitted,

WILLIAMSON & RUSNAK

/s/ Jesus Chapa
Jesus Chapa
Texas Bar No. 24075891
Cyndi Rusnak
Texas Bar No. 24007964
4310 Yoakum Blvd.
Houston, Texas 77006
Telephone (713) 223-3330
Facsimile (713) 223-0001
jesus@jimmywilliamson.com
cyndi@jimmywilliamson.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I sent a true and correct copy of the attached discovery requests to Defendant(s) as an attachment to the petition. Therefore, Defendant would have received it when it was served with the citation.

/s/ Jesus Chapa
Jesus Chapa

## INTERROGATORIES TO DEFENDANT METROPOLITAN

1. Identify the name, address, and role in the claim made the basis of this Lawsuit, if any, for all persons providing information for the answers these interrogatories.

ANSWER:

2. Identify all persons and/or entities who handled the claim made the basis of the Lawsuit on behalf of Defendant.

ANSWER:

3. Does Defendant contend that Plaintiff(s) failed to provide proper notice of the claim made the basis of this Lawsuit under either the policy or the Texas Insurance Code, and, if so, describe how the notice was deficient, and identify any resulting prejudice caused to Defendant.

ANSWER:

4. Does Defendant claim that Plaintiff(s) failed to mitigate his or her damages? If so, describe how Plaintiff failed to do so, identifying any resulting prejudice caused to Defendant.

ANSWER:

5. Does Defendant contend that Plaintiff(s) failed to provide Defendant with requested documents and/or information? If so, identify all requests to which Plaintiff(s) did not respond and state whether you denied any portion of the claim based on Plaintiff's(s') failure to respond.

ANSWER:

6.   At the time the claim made the basis of this Lawsuit was investigated and the Property inspected (and prior to anticipation of litigation), describe all damage attributable to the storm observed at the Property by Defendant or any persons or entities on behalf of Defendant.

ANSWER:

7.   Identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion identified, state the reason(s) that Defendant relied upon to apply that exclusion.

ANSWER:

8.   Describe how Defendant determined whether overhead and profit ("O&P") should be applied to the claim made the basis of this Lawsuit, identifying the criteria for that determination.

ANSWER:

9.   Identify all items on the claim made the basis of this Lawsuit to which Defendant applied depreciation, stating for each item the criteria used and the age of the item.

ANSWER:

10.  To the extent Defendant utilized an estimating software program and modified the manufacturer's settings with respect to Plaintiffs' claim, identify those modifications.

ANSWER:

11.   State whether Defendant applied depreciation to the tear off of the damaged roof and/or other debris removal in the claim made the basis of this Lawsuit, identifying the basis for that depreciation and the applicable policy section under which the tear off was paid under.

**ANSWER:**

12.   Identify all price lists used to prepare all estimates on the claim made the basis of this Lawsuit, stating the manufacturer, version, date and geographical area.

**ANSWER:**

13.   To extent Defendant is aware, state whether the estimate(s) prepared for the claim made the basis of lawsuit wrongly included or excluded any item or payment. If so, identify each item or payment and state whether it should have been included or excluded from the estimates prepared on the claim made the basis this Lawsuit.

**ANSWER:**

14.   To the extent Defendant is aware, state any violations of Texas Insurance Code Section 541 that were discovered on this claim during the claims handling process.

**ANSWER:**

15.   To the extent Defendant is aware, state any violations of Texas Insurance Code Section 542 that were discovered on this claim during the claims handling process.

**ANSWER:**

16.  To the extent Defendant is aware, state any violations of the requirements or obligations owed to Plaintiff(s) under the Policy relating the claim made the basis of this Lawsuit that were discovered during the claims handling process.

ANSWER:

17.  State the date Defendant first anticipated litigation.

ANSWER:

18.  State every basis, in fact and in the terms of Plaintiff's policy, for Defendant's(s') denial or partial denial and/or recommendation of denial or partial denial of Plaintiff's claim(s).

ANSWER:

19.  Identify every other insurance claim (by name, address and telephone no. of the insured) made for property damage in the same city/town as the house at issue in this case, and stemming from the same storm, which claim was paid in part or whole. This is limited to within 5 miles of Plaintiff's(s') insured property.

ANSWER:

20.  Identify anyone who recommended payment on Plaintiff's claim(s), and if so, state what amount(s).

ANSWER:

21.     Give the name, address and telephone number of all persons making a claim with you for property damage for the same date of loss as Plaintiff's claim. This request is limited to persons who live within a 5 mile radius of Plaintiff's insured residence.

ANSWER:


22.     List all of your approved or preferred engineers, third party adjusters/adjusting companies, roofers and contractors, for windstorm claims in Texas from one year prior to the date of loss at issue to date.

ANSWER:

## REQUESTS FOR PRODUCTION TO DEFENDANT METROPOLITAN

1.      The following insurance documents issued for the Property as identified in the Petition:
   a.   the policy at issue for the date of loss as identified in the Petition; and
   b.   the policy declarations page for the 3 years preceding the

storm.

**RESPONSE:**


2.      Produce underwriting files and documents relating to the underwriting for all insurance policies for the Property at issue. This request is limited to the past 5 years. To the extent Defendant contends that the underwriting file or documents older than 5 years impact the damages or coverage, produce that underwriting file or document.

**RESPONSE:**


3.      All documents relating to the condition or damages of the Property or any insurance  claim on the Property.

**RESPONSE:**


4.      All documents relating to any real property insurance claims made by the Plaintiff(s). This request is limited to the past 5 years. To the extent Defendant contends that documents older than 5 years impact the damages or coverage, produce that document.

**RESPONSE:**


5.      All requests for information to any third party about the Property, the Plaintiff(s), or the  claims made the basis of this Lawsuit.

**RESPONSE:**

6.    All documents used to instruct, advice, guide, inform, educate, or assist provided to any  person handling the claim made the basis of this Lawsuit that related to the adjustment of  this type of claim, i.e., hail property damage.

RESPONSE:

7.    All documents obtained from any person(s) or entity(ies) and governmental agencies on  behalf of Defendant or by Defendant relating to the Plaintiff(s), the Property, the Policy,   or the claims made the basis of this Lawsuit. This request includes all documents  obtained by way of deposition on written questions.

RESPONSE:

8.    All documents received (prior to litigation) directly or indirectly from Plaintiff(s) or  created by Plaintiff(s) related to the Property made the basis of this lawsuit. This request  is limited to the past 5 years. To the extent Defendant contends that any document older  than 5 years impact the damages or coverage, produce that document.

RESPONSE:

9.    Produce a copy of all price lists used to prepare any estimates for the claim made the basis of this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third  party, you can reference the vendor and version of the pricelist with a stipulation that it is  unmodified.

RESPONSE:

10.    To the extent Defendant created or altered any prices used in the preparation of an  estimate in the claim made the basis of this Lawsuit, produce all documents related to the  creation or alteration of the price, including the original price for that item and the factual  bases for the creation or alteration.

**RESPONSE:**

11.  A complete copy the personnel file related to performance (excluding medical and retirement information) for all people and their managers and/or supervisors who directly handled the claim made the basis of this Lawsuit, including all documents relating to applications for employment, former and current resumes, last known address, job title, job descriptions, reviews, evaluations, and all drafts or versions of requested documents. This request is limited to the past 5 years.

**RESPONSE:**

12.  All organizational charts, diagrams, lists, an/or documents reflecting each department, division or section of Defendant's company to which the claim made the basis of this Lawsuit was assigned.

**RESPONSE:**

13.  All Texas insurance licenses and/or certifications in effect at the time of the claims arising out of the storms at issue for all persons who worked on the claim made the basis of this Lawsuit, including any document relating to the application, issuance or review of those licenses and/or certifications. This request excludes those who performed merely ministerial acts, i.e. people who answer phones, file clerks whose only job duty is to stamp "received," etc.

**RESPONSE:**

14.  If an engineer and/or engineering firm evaluated the Property, produce all reports written at the request of Defendant by that engineer or engineering firm within the last 5 years. This request is limited to the extent that the engineer and/or engineering firm was used during claims handling.

**RESPONSE:**

15.   Produce all documents showing amounts billed and paid to any engineer and/or engineering firm identified in response to Request for Production above within the last three years. A summary is acceptable in lieu of actual invoices or payments.

**RESPONSE:**

16.   All documents reflecting the pre-anticipation of litigation reserve(s) set on the claim made the basis of this Lawsuit, including any changes to the reserve(s) along with any supporting documentation.

**RESPONSE:**

17.   All documents relating to issues of honesty, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior which resulted in disciplinary action by Defendant of any person(s) or entity(ies) who handled the claim made the basis of this Lawsuit, the Plaintiff(s) or any person assisting on the claim made the basis of this Lawsuit.

**RESPONSE:**

18.   All documents relating to work performance, claims patterns, claims problems, commendations, claims trends, claims recognitions, and/or concerns for any person who handled the claim made the basis of this Lawsuit.

**RESPONSE:**

19.   All XactAnalysis reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit relating to claims arising out of the storm(s) occurring on the date(s) of loss claimed by Plaintiff(s).

**RESPONSE:**

20.     Any email or document that transmits, discusses, or analyzes any report produced in response to the Request for Production immediately above.

**RESPONSE:**

21.     All Simsol Management reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit relating to claims arising out of the hail storms occurring in the county of suit on or about the date of loss claimed by Plaintiff(s).

**RESPONSE:**

22.     Any email or document that transmits, discusses, or analyzes any report produced in response to the Request for Production immediately above.

**RESPONSE:**

23.     For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert: all documents or tangible things that have been provided to, reviewed by, or prepared for the testifying expert.

**RESPONSE:**

24.     Pursuant to Texas Rule of Evidence 609(f), provide all documents evidencing conviction of a crime which you intend to use as evidence to impeach any party or witness.

**RESPONSE:**

25.   All indemnity agreements in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

RESPONSE:

26.   All contracts in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

RESPONSE:

27.   All confidentiality agreements and/or instructions regarding confidentiality in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who the claim made the basis of the Lawsuit.

RESPONSE:

28.   All documents between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit regarding document retention policy in effect at the time of Plaintiffs' claim.

RESPONSE:

29.   To the extent the claim involves rescinding of the policy, all documents regarding Defendant's standards for investigating and rescinding and/or voiding a policy.

RESPONSE:

30.     A List of all of your approved or preferred engineers, third party adjusters/adjusting companies, roofers and contractors, for windstorm claims in Texas from one year prior to  the date of loss at issue to date.

**RESPONSE:**

## FIRST SET OF REQUESTS FOR ADMISSIONS TO
## METROPOLITAN

**REQUEST FOR ADMISSION NO. 1.**  Admit you committed statutory bad faith in adjusting  Plaintiff's claim.

**RESPONSE:**

**REQUEST FOR  ADMISSION  NO. 2.**    Admit you committed common law  bad  faith  in adjusting Plaintiff's claim.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 3.**  Admit you breached the insurance agreement by failing  to pay the full amount owed there under.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 4.**  Admit you breached the insurance agreement by failing  to pay the full amount owed there under on a timely basis.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 5.**  Admit you breached the Texas Prompt Payment Act

by  failing to pay the full amount owed under the policy in a timely fashion.

**RESPONSE:**

10/11/2017 10:03 AM
Chris Daniel - District Clerk Harris County
Envelope No. 19989066
By: Janel gutierrez
Filed: 10/11/2017 10:03 AM

CAUSE NO. 2017-57161

| | | |
|---|---|---|
| JACKELINE PICASSO, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | HARRIS COUNTY, TEXAS |
| METROPOLITAN LLOYDS INSURANCE | § | |
| COMPANY OF TEXAS, | § | |
| | § | |
| Defendant | § | 127TH DISTRICT COURT |

## DEFENDANT METROPOLITAN LLOYDS INSURANCE COMPANY OF TEXAS' ORIGINAL ANSWER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Metropolitan Lloyds Insurance Company of Texas, ("Defendant"), and files this Original Answer, and in support thereof would respectfully show this Honorable Court the following:

### I. GENERAL DENIAL

Defendant denies all and singular, each and every allegation contained in Plaintiff's Original Petition, and says that the same are not true in whole or in part, and demands strict proof thereof by a preponderance of the evidence.

### II. AFFIRMATIVE DEFENSES

Pleading in the affirmative, pursuant to Rule 94 of the Texas Rules of Civil Procedure, Defendant alleges the following affirmative defenses:

Defendant asserts that any claims for punitive/exemplary damages are governed and limited by Chapter 41 of the Texas Civil Practice & Remedies Code, including but not limited to, §§ 41.003, 41.004, 41.006, 41.007 and 41.008.

Defendant further asserts that punitive/exemplary damages cannot be sustained because an award of punitive/exemplary damages under Texas law, subject to no predetermined limit such as a maximum multiple of compensatory damages or a maximum amount on the amount of punitive/exemplary damages that may be imposed, would violate Defendant's due process rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, would violate Defendant's rights not to be subjected to an excessive fine in violation of the Eighth Amendment to the United States Constitution, and would be improper under the common law and public policies of the State of Texas, §§ 3 and 19 of the Texas Constitution. In addition, Defendant asserts that any claims of the Plaintiff for punitive/exemplary damages against Defendant should be proved beyond a reasonable doubt under the Sixth Amendment to the United States Constitution, as opposed to a mere preponderance of the evidence.

Defendant asserts that punitive/exemplary damages are barred by the due process and excessive fines provisions contained within the United States Constitution and Article I, §§ 3 and 19 of the Texas Constitution.

Defendant also asserts that claims for punitive/exemplary damages against Defendant cannot be sustained because an award of punitive/exemplary damages in this case, combined with any prior, contemporaneous, or subsequent judgment against Defendant for punitive/exemplary damages arising out of Defendant's acts or omissions, would constitute impermissible multiple punishments for the same wrong in violation of Defendant's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and would constitute double jeopardy in violation of the common law and statutory law of the State of Texas, and Article I, §§ 3 and 19 of the Texas Constitution.

Pleading further, Defendant specifically pleads that Plaintiff is not entitled to recovery of exemplary damages absent a showing of fraud or malice or a willful act or omission of gross neglect on the part of Defendant, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 41.

Defendant further alleges all of the terms and provisions of the policy of insurance issued to the Plaintiff by Metropolitan Lloyds Insurance Company of Texas, including but not limited to the following policy provisions:

**COVERAGE A - DWELLING**
1.     **Dwelling Owners.** If **your** dwelling is a one, two, three or four family dwelling, **we** cover:
    A.     the dwelling owned by **you** on the **residence premises**; and
    B.     structures, equipment and accessories attached to the dwelling. Swimming pools not fully enclosed within the dwelling are covered under **COVERAGE B - PRIVATE STRUCTURES.**

                                         * * *

**COVERAGE B – PRIVATE STRUCTURES**
At the location of the **residence premises:**
1.     **we** cover private structures owned by **you** and separated from the dwelling by clear space; or

                                         * * *

Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be private structures.

**We** do not cover private structures:
1.     used or held for any **business** or commercial farming purposes; or
2.     rented or held for rental to a person not a tenant of the dwelling, unless solely used as a private garage.

This coverage does not apply to land, including land on which the private structures are located, or any costs required to replace, rebuild, stabilize or otherwise restore the land.

                                         * * *

**COVERAGE C - PERSONAL PROPERTY**
**Personal Property Covered**
**We** cover personal property owned or used by **you** while it is anywhere in the world.

\* \* \*

## CAUSES OF PROPERTY LOSS

## SECTION I - LOSSES WE COVER
## (COMPREHENSIVE PERILS)

**LOSS DEDUCTIBLE CLAUSE**
We will pay only when a loss exceeds the deductible amount shown in the Declarations.
We will pay only that part of the loss over such stated deductible.

**COVERAGE A – DWELLING**
**COVERAGE B – PRIVATE STRUCTURES**
**COVERAGE C – PERSONAL PROPERTY**
We will pay for sudden and accidental direct physical loss or damage to the property
described in Coverages A, B and C, except as excluded in **SECTION 1 – LOSSES WE
DO NOT COVER.**

## SECTION I - BROAD NAMED PERILS

Whenever Broad Named Perils is referred to in this policy, the following causes of loss
will apply for sudden and accidental direct physical loss.

Under the named perils listed below, **we** do not cover loss or damage, no matter how
caused, to the property which results directly or indirectly from **fungus and mold**. There
is no coverage for loss which, in whole or in part, arises out of, is aggravated by,
contributed to by acts or omissions of persons, or results from **fungus and mold**. This
exclusion applies regardless of whether **fungus and mold** arises from any other cause of
loss, including but not limited to a loss involving water, water damage or discharge,
which may be otherwise covered by this policy, except as granted under **SECTION I -
ADDITIONAL COVERAGES for Fungus and Mold Remediation.**

\* \* \*

2.      **Windstorm or Hail**
        We do not pay for loss to the interior of a building or to personal property inside,
        caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the
        roof or walls and the wind forces rain, snow, sleet, sand or dust through the
        opening.

\* \* \*

## SECTION I - LOSSES WE DO NOT COVER

\* \* \*

DEFENDANT METROPOLITAN LLOYDS INSURANCE
COMPANY OF TEXAS' ORIGINAL ANSWER - PAGE 4

1.   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

D.   **Water damage,** meaning any loss caused by, resulting from, contributed to or aggravated by:

   1.   flood, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind;

   2.   water or water-borne material which backs up through sewers or drains, or which overflows or is discharged from a sump pump, sump pump well or other system designed to remove subsurface water which is drained from the foundation area; or

   3.   water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure of water which causes earth movement

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

However, **we** pay for direct loss that ensues after water damage if caused by fire, theft or explosion and then **we** pay for only the ensuing loss.

Water damage to property described in Coverage C away from a premises or location owned, rented, occupied or controlled by **you** is excluded even if weather conditions contribute in any way to produce the loss.

\* \* \*

H.   **Neglect** by **you** to use all reasonable means to save and preserve property at and after the time of a loss.

\* \* \*

2.   We do not insure under Coverage A and Coverage B for any loss consisting of one or more of the items below. However, **we** pay for any ensuing loss unless the ensuing loss is itself excluded by any other provision in this policy. Further, **we** do not insure for loss described in Exclusion 1. above and Exclusions 3. and 4. below regardless of whether one or more of the following:   (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

      A.     conduct, act, failure to act, or decision of any person, group, organization or governmental body;

      B.     defective, inadequate, faulty or unsound:

          1.     planning, zoning, development, surveying, siting;

          2.     design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

          3.     materials used in repair, construction, renovation or remodeling; or

          4.     maintenance;

      of any property whether on or off the residence **premises**. Property includes land, structures or improvements of any kind; and

      C.     weather conditions.

      However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

3.     We do not cover loss or damage to the property described in Coverage A, Coverage B and Coverage C which results directly or indirectly from any of the following:

      A.     wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

                   \* \* \*

We do pay for any direct loss that follows items A. through H. to property described in Coverages A, B and C not otherwise excluded or excepted in this policy and then we pay for only the ensuing loss. If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

                   \* \* \*

Pleading further, Defendant would also assert that Plaintiff has failed to comply with the terms and conditions of the insurance policy issued by Metropolitan Lloyds Insurance Company of Texas to the Plaintiff. Specifically, the subject insurance policy provides as follows:

SECTION I – CONDITIONS

\* \* \*

2.  **What you Must do After a Loss.** We have no obligations to provide coverage under this policy if **you** or **your** representative fail to comply with the following duties and the failure to comply is prejudicial to **us**:

   A.  Promptly notify **us** or **our** representative.
   B.  Protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep a record of necessary expenditures.
   C.  Cooperate with us in the investigation of a claim.

   \* \* \*

   E.  At any reasonable time and place **we** designate, and as often as **we** reasonably require:
       1.  show **us** the damaged property;
       2.  submit to questions concerning the loss under oath while not in the presence of any other person defined as **"you"**, and sign and swear to the answers; and

   \* \* \*

7.  **Appraisal.** If **you** and we fail to agree on the amount of loss, either **you** or **we** can make a written demand for an appraisal of the loss. Each party will select a competent appraiser and notify the other within 20 days of the appraiser's identity. The two appraisers will select a competent and impartial umpire. If the two appraisers are unable to select an umpire within 15 days, **you** or **we** can request that the choice of an umpire be made by a judge of a court of record in the state where the **residence premises** is located.

   The appraisers will separately set the amount of loss determining the full replacement cost and **actual cash value** for each item as needed. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. The written award by two of these three people for any item will set the amount of loss and is binding on **you** and **us** when filed with **us**.

   **You** will pay the appraiser selected by **you**. **We** will pay the appraiser selected by **us**. **You** and **we** will split the other expenses of appraisal and the fee of the umpire.

   With regard to Appraisal, the term **"you"** applies only to the named insured, including spouse if a resident of the same household.

### III. JURY DEMAND

Defendant demands trial by jury.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiff take nothing against Defendant, and that Defendant go henceforth without day, with its costs, and for such other and further relief, both at law and in equity, specific and general, to which Defendant may show itself to be justly entitled.

Respectfully submitted,

STACY | CONDER | ALLEN LLP

By: _____
Dennis D. Conder
State Bar No. 04656400

901 Main Street, Suite 6200
Dallas, Texas 75202
(214) 748-5000
(214) 748-1421 FAX
conder@stacyconder.com

ATTORNEYS FOR DEFENDANT
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 11th day of October, 2017, a copy of the foregoing was delivered via certified mail, return receipt requested, to Plaintiff's counsel of record.

_____
Dennis D. Conder

PAN/PLDG/594272.1/001466.17030

DEFENDANT METROPOLITAN LLOYDS INSURANCE
COMPANY OF TEXAS' ORIGINAL ANSWER - PAGE 8